UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
DALVIN TURNER,

                  Plaintiff,

      -against-

THE CITY OF NEW YORK, EBONY
HUNTLEY, and JOHN and JANE DOES,

                  Defendants.
----------------------------------------X

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ DEC 20 2011 ★
BROOKLYN OFFICE

CV11-6175

COMPLAINT

PLAINTIFF DEMANDS
A TRIAL BY JURY

WEINSTEIN, J.
BLOOM, M.J.

      Plaintiff, Dalvin Turner, by his attorneys, Reibman & Weiner, as and for his Complaint, hereby alleges as follows, upon information and belief:

### PARTIES, VENUE and JURISDICTION

      1.    At all times hereinafter mentioned, plaintiff Dalvin Turner, was an adult male resident of Kings County, within the State of New York.

      2.    At all relevant times hereinafter mentioned, defendant City of New York ("New York City"), was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD"), and their employees.

      3.    At all relevant times hereinafter mentioned, defendant Ebony Huntley (Tax 930380), was an adult female employed by the City of New York as a member of the NYPD. Defendant Huntley is sued herein in her official and individual capacities.

      4.    At all relevant times hereinafter mentioned, defendants John and Jane Does 1-5, were individuals employed by the City of New York as members of the NYPD whose

identities are unknown. The Doe defendants are sued herein in their official and individual capacities.

5. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, and 42 U.S.C. § 1983.

6. Venue is properly laid, pursuant to 28 U.S.C. Section 1391, et seq., in the Eastern District of New York, where the plaintiff and defendant City of New York reside, and where the majority of the actions complained of herein occurred.

## RELEVANT FACTS

7. On December 26, 2008, at about 6:30 p.m., plaintiff was lawfully walking in Brooklyn.

8. As plaintiff walked along Halsey Street, he encountered the defendants, who, without a reasonable basis to do so, stopped and questioned plaintiff in front of 392 Halsey Street.

9. Each of the individual defendants, including the Doe defendants, are believed to have been members of the Brooklyn North Narcotics Division at the time.

10. Plaintiff was not engaged in any unlawful or suspicious activity, and informed defendants that he was walking to his vehicle which was parked on Halsey Street.

11. Despite the absence of any evidence of wrongdoing on the part of plaintiff, the defendants took plaintiff into 392 Halsey Street. Here, plaintiff was questioned by defendant Huntley, and was formally arrested.

12. Plaintiff was then transferred to a local area precinct, where he was held for several hours, before he was transferred to Kings County Central Booking, where he was held

for several more hours before he was arraigned on a criminal complaint sworn to by defendant Huntley.

13. The decision to arrest plaintiff was objectively unreasonable under the circumstances, as plaintiff had not been present inside the premises and there was no reasonable basis to connect him in any way possible to criminal activity at that location.

14. Plaintiff was arraigned approximately 30 hours after his arrest based on the criminal complaint in which Defendant Huntley made various false factual allegations, including, but not limited to, allegations that plaintiff was observed inside of 392 Halsey Street on the day of the arrest on December 26, 2008, wearing a barber smock and standing near the barber chairs, where various narcotics and contraband were allegedly recovered.

15. Plaintiff was arraigned on various alleged criminal acts pursuant to these false allegations, including unauthorized use of a professional title, criminal and unlawful possession of marihuana, and trademark counterfeiting.

16. Defendant was prosecuted and forced to make several court appearances over the course of thee years pursuant to these false allegations.

17. It was objectively unreasonable for defendant Huntley to commence the plaintiff's prosecution for the allegations made in the complaint, as there was no evidence to support these charges.

18. At no time did there exist any basis to utilize any level of force against plaintiff, much less the force actually employed, nor could any of the defendants have reasonably believed that such force was necessary.

19. At no time did defendants take any steps to intervene in, prevent, or

3

otherwise limit the heretofore misconduct engaged in against plaintiff.

20. The individual defendants, including the Doe defendants, intentionally and deliberately gave false statements and/or failed to file accurate or corrective statements, or otherwise failed to report the conduct of the defendants who engaged in the misconduct described herein as required.

21. Approximately three years after his arrest, on November 11, 2011, the criminal court dismissed all of the charges against the plaintiff, and the prosecution was terminated in his favor.

22. That at all times relevant herein, the defendants were on duty and acting within the scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

### FIRST CAUSE OF ACTION

23. Plaintiff repeats the allegations contained in paragraphs "1" through "22" above as though stated fully herein.

24. Defendants willfully and intentionally seized, searched, imprisoned, and arrested plaintiff without probable cause, and maliciously prosecuted him, all without a reasonable basis to believe such cause existed.

25. Defendants willfully and intentionally subjected plaintiff to physical force in excess of what was reasonable under the circumstances and caused plaintiff to suffer physical injuries, and did so without a reasonable basis to believe that such conduct was appropriate, reasonable, lawful, or necessary.

26. By so doing, the individual defendants, individually and collectively,

subjected the plaintiff to false arrest and imprisonment, excessive force, unlawful searches of person and property, denial of due process, and malicious use and abuse of process, and thereby violated, conspired to violate, and aided and abetted in the violation of plaintiff's rights under the Fourth and Fourteenth Amendments of the United States Constitution.

27. By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of his constitutional rights.

## SECOND CAUSE OF ACTION

28. Plaintiff repeats the allegations contained in paragraphs "1" through "27" above as though stated fully herein.

29. Defendant City of New York was responsible for ensuring that reasonable and appropriate levels of supervision were in place within and/or over the NYPD.

30. Defendant had actual or constructive knowledge that there was inadequate supervision over and/or within the NYPD with respect to its members' abuse of their authority, use of excessive force, abuse of arrest powers, and other blatant violations of the United States Constitution and the rules and regulations of the NYPD. Despite ample notice of inadequate supervision, defendants took no steps to ensure that reasonable and appropriate levels of supervision were put in place to reasonably ensure that NYPD members engaged in police conduct in a lawful and proper manner, including their use of their authority as law enforcement officers with respect to the general public, including, and specifically, the plaintiff herein.

31. The defendant City of New York deliberately and intentionally chose not to take action to correct the chronic, systemic, and institutional misuse and abuse of police

authority by its NYPD employees, and thereby deliberately and intentionally adopted, condoned, and otherwise created through deliberate inaction and negligent supervision, an NYPD policy, practice, and custom of utilizing illegal and impermissible searches, arrests, and detentions, and the manufacturing of evidence, in the ordinary course of NYPD business in flagrant disregard of the state and federal constitutions, as well as the Patrol Guide, up to and beyond the plaintiff's arrest.

32. All of the acts and omissions by the individual defendants described above were carried out pursuant to overlapping policies and practices of the municipal defendant in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures and rules of the City and the NYPD, all under the supervision of ranking officers of the NYPD

33. The aforementioned customs, practices, procedures, and rules of the City and the NYPD include, but are not limited to, the following unconstitutional practices:

   a. Using excessive force on individuals, including but not limited to those who have already been handcuffed;

   b. Failing to supervise, train, instruct and discipline police officers and encouraging their misconduct;

   c. Discouraging police officers from reporting the corrupt or unlawful acts of other officers;

   d. Retaliating against officers who report police misconduct; and

   e. Failing to intervene to prevent the above-mentioned practices when such intervention is reasonably available.

41. The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in the following,

non-exhaustive list of civil actions:

    a. *Thompson v. City of New York,* 10-CV-3603 (ARR) (SMG) (E.D.N.Y.)

    b. *Lotorto v. City of New York,* 10-CV-1223 (ILG) (JMA) (E.D.N.Y.);

    c. *Zabala v. City of New York,* 37711/2010 (Sup. Ct., Kings Co.);

    d. *Ashe v. City of New York,* 09-CV-9696 (GBD) (THK) (S.D.N.Y.);

    e. *Long v. City of New York,* 09-CV-9216 (AKH) (S.D.N.Y.);

    f. *Moise v. City of New York,* 09-CV-9855 (DC) (JLC) (S.D.N.Y.)

    g. *Taylor-Mickens v. City of New York,* 09-CV-7923 (RWS) (SD.N.Y.)

    h. *Carmody v. City of New York,* 05-CV-8084 (HB), 2006 U.S. Dist. LEXIS 83207

    i. *McMillan v. City of New York,* 04-CV-3990 (FB) (RML) (E.D.N.Y.);

    j. *Avent v. City of New York,* 04-CV-2451 (CBA) (CLP) (E.D.N.Y.):

    k. *Smith v. City of New York,* 04-CV-1045 (RRM) (JMA) (E.D.N.Y.);

    l. *Powers v. City of New York,* 04-CV-2246 (NGG) (E.D.N.Y.);

    m. *Dotson v. City of New York,* 03-CV-2136 (RMB) (S.D.N.Y.);

    n. *Nonnemann v. City of New York,* 02-CV-I0131 (JSR) (AJP) (S.D.N.Y.);

    o. *Richardson v. City of New York,* 02-CV-3651 (JG) (CLP) (E.D.N.Y.);

    p. *Barry v. New York City Police Department,* 01-CV-10627 (CBM) (S.D.N.Y.);

    q. *Walton v. Safir,* 99-CV-4430 (AKH) (S.D.N.Y.);

  r. *White-Ruiz v. The City of New York*, 93-CV-7233 (DLC) (MHD) (S.D.N.Y.);

  s. *Ariza v. City of New York*, 93-CV-5287 (CPS) (E.D.N.Y.);

42. In an Order dated November 25, 2009, in *Colon v. City of New York*, 09-CV-0008 (E.D.N.Y.), the Hon. Jack B. Weinstein stated:

> Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration -- through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department -- there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.

43. Furthermore, more than half the time that the Civilian Complaint Review Board refers substantiated complaints against officers to the NYPD for disciplinary action, the NYPD either simply issues a verbal warning or drops the charges altogether.

44. It is therefore clear that the municipal defendant has not only tolerated, but actively fostered a lawless atmosphere within the NYPD and that the City of New York was deliberately indifferent to the risk that the inadequate level of supervision would lead to the violation of individuals' constitutional rights in general, and caused the violation of plaintiff's rights in particular.

45. By reason thereof, defendant has violated 42 U.S.C. §1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of his constitutional rights.

## THIRD CAUSE OF ACTION

46. Plaintiff repeats the allegations contained in paragraphs "1" through "45" above as though stated fully herein.

47. The defendants' actions in this matter were carried out in accordance with an existing plan or policy created or otherwise condoned by the municipal defendant designed to increase the number of arrests made without regard to probable cause.

48. More precisely, under this policy or plan, officers within the Narcotics Bureau, including the individual defendants, would secure warrants to search social clubs, apartments, and other locations, and, if any contraband was found, routinely arrest all persons found therein, regardless of whether there was any factual basis for the charges. The arresting officer(s) would then make false statements of fact as to seeing narcotics in plain view or otherwise in the possession of each of the persons arrested.

49. The purpose of this policy or plan was to generate large numbers of arrests to help the NYPD create a false impression of positive activity by their officers.

50. In addition, members of the Narcotics Bureau are evaluated, at least in part, on the basis of their "activity" which is measured by the number of arrests made, search warrants secured, and other, similar criteria. Thus, members of the Narcotics Bureau routinely make arrests and engage in other police activity without sufficient legal cause in order to raise their levels of "activity" and improve the perception of their job performance.

51. The policy or plan was kept in effect from, at least, 2006 through, at least, the date of plaintiff's arrest, despite the municipal defendant's knowledge that the individuals arrested were not being charged or that there was insufficient evidence to justify the arrests or

that the arresting officers were seeking to bolster the arrests with false allegations, and that the prosecuting offices often had found insufficient cause to justify the imposition of charges or continued prosecution if charges were filed.

52. In October 2011, following a bench trial in New York State Supreme Court, Kings County, under indictment number 06314-2008, former NYPD narcotics officer Jason Arbeeny was convicted of planting drugs on two individuals and falsifying arrest reports. Before issuing a verdict of guilty, the trial judge scolded the NYPD for what he described as a "widespread culture of corruption endemic in its drug units." The judge further stated that the testimony demonstrated that the NYPD narcotics divisions maintain a "cowboy culture" and that he was "shocked, not only by the seeming pervasive scope of misconduct but even more distressingly by the seeming casualness by which such conduct is employed."

53. That at all times relevant herein, the defendants were acting within the scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

54. Defendant City of New York created, approved or condoned the practice and policy, as carried out by the Narcotics Bureau, of making wholesale arrests without probable cause in order to create false or misleading arrest numbers.

55. By reason thereof, defendant has violated 42 U.S.C. §1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of his constitutional rights

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

WHEREFORE, the plaintiff demands judgment against defendants jointly and severally as follows:

i. on the causes of action one through three, actual and punitive damages in an amount to be determined at trial;

ii. statutory attorney's fees pursuant to, *inter alia*, 42 U.S.C. §1988 and New York common law, disbursements, and costs of the action; and

iii. such other relief as the Court deems just and proper.

Dated: Brooklyn, New York
December 20, 2011

By: _____
Michael Lumer (ML-1947)
Jessica Massimi (JM-2920)
Reibman & Weiner
Attorneys for Plaintiff
26 Court Street, Suite 1808
Brooklyn, New York 11242
(718) 522-1743

11